UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY WILLIAMS,<br><br>    Plaintiff,<br><br>    v.<br><br>A. LUJAN,<br><br>    Defendant. | Case No. 16-cv-04290-HSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 27 |

Plaintiff, an inmate at San Quentin State Prison ("SQSP"), has filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that SQSP Officer Lujan confiscated several items of Plaintiff's personal property on October 9, 2015, in violation of Plaintiff's federal due process rights. Dkt. No. 19; Dkt. No. 17 at 2; and Dkt. No. 20 at 2. Now pending before the Court is Defendant Lujan's motion for summary judgment. Dkt. No. 27. Plaintiff has filed an opposition, Dkt. No. 36; and Defendant Lujan has filed a reply, Dkt. No. 40. For the reasons set forth below, Defendant Lujan's motion for summary judgment is GRANTED.

## BACKGROUND

**A.  Undisputed Facts**

Plaintiff was previously housed at Folsom State Prison ("FSP"). On or about March 23, 2015,[1] Plaintiff was moved from the FSP general population to the FSP administrative segregation unit. Dkt. No. 36 at 28. At that time, an inventory was taken of Plaintiff's property which established that he possessed *inter alia* two pairs of shoes and two watches. Dkt. No. 36 at 38.

---

[1] In his declaration, Plaintiff states that he was removed from FSP's general population to FSP's administrative segregation on March 23, 2017. Dkt. No. 36 at 28. The Court presumes that the year 2017 is a typographical error and that Plaintiff intended to refer to the year 2015. According to the record, Plaintiff has been housed in SQSP since June 2015. Dkt. No. 36 at 29.

The inventory does not specify the brand of either the watches or the shoes. Dkt. No. 36 at 38. An undated FSP Registered Property receipt states that the only registered property that Plaintiff possessed while at FSP was a 15.6 inch RCA television, purchased on February 21, 2015; one pair of size 13 Air Jordans, purchased on January 23, 2015; and one eight-inch West Bend brand fan, purchased on March 19, 2014. Dkt. Nos. 27-2 and 27-3. Registered property refers to personal property items that are not consumable and possess enough intrinsic value to be a significant target for theft or bartering. Cal. Dep't Corr. & Rehab. Dep't Operations Manual ("DOM") § 54030.12.1. Inmates must register these items with the prison on their Inmate Property Control Card, CDC Form 160-H, by listing the item, the purchase date, and the purchase price; and by attaching a copy of the purchase receipt if available. DOM § 54030.12.1. Watches and shoes must be registered. Dkt. No. 27-8 ("Lujan Decl.), Ex. B.

On or about June 2015, Plaintiff was transferred from FSP to SQSP. Dkt. No. 36 at 29. SQSP inventoried Plaintiff's property on June 12, 2015, and listed only one pair of Nike shoes and one Gucci watch. Dkt. No. 36 at 40. No Invicta watch was listed on the property inventory.

On July 13, 2015, Plaintiff's cell was searched by the Investigative Services Unit ("ISU"). Dkt. No. 19 at 1 and 10; Dkt. No. 28-1 at 6. ISU did not confiscate his Nike shoes or watches.

On September 25, 2015, Defendant Lujan searched Plaintiff's cell for over an hour and discovered a contraband cell phone, which she confiscated. Dkt. No. 19 at 1 and 10; and Dkt. No. 27-4 ("Lujan Decl.") ¶ 9, Ex. I. Defendant Lujan did not confiscate the Nike shoes or watches at that time. Dkt. No. 19 at 1 and 10.

On October 9, 2015, Defendant Lujan searched Plaintiff's cell and found the following two items which were stored in plain sight: an Invicta Reserve watch with an extra metal band, and a pair of Nike Air Jordan shoes, size 12, with metal eyelets. Dkt. No. 19 at 1 and 10; Dkt. No. 36 at 10. Defendant Lujan confiscated these items. On the confiscation receipt, she stated that the items were being confiscated because they were contraband and because they were not listed on Plaintiff's property card. Dkt. No. 36 at 42. Defendant Lujan performed a Google search to ascertain whether the Invicta watch exceeded the $50 value limitation for watches registered to inmates, and learned that the Invicta watch did exceed the allowable value. Lujan Decl. ¶ 7. The

2

1 Invicta watch retails for $376.35. Dkt. No. 40-2; Lujan Decl. ¶ 7. Plaintiff has not provided

2 prison officials with purchase receipts for either of the confiscated items. Lujan Decl. ¶ 7 and Dkt.

3 No 36 at 11.

4 Prison officials denied Plaintiff's repeated requests that he be allowed to send the

5 confiscated items to family or friends outside of prison. Dkt. No. 36 at 19.

6 On October 26, 2015, Plaintiff submitted a CDCR Form 22 Request for Interview,

7 requesting that his items be returned to him or that he be allowed to send them home. Dkt. No. 19

8 at 20. Defendant Lujan denied the Form 22 request on the grounds that Plaintiff could not prove

9 authorized ownership of the items. Dkt. No. 19 at 20.

10 On November 16, 2015, Plaintiff filed Grievance No. SQ-15-3099, which alleged *inter

11 alia* that Defendant Lujan improperly confiscated his property. Dkt. No. 28-1 at 4–7. Plaintiff

12 requested *inter alia* that the shoes and watch be returned to him, or that he be allowed to send

13 them home. Dkt. No. 28-1 at 4–7. This grievance was denied at all levels of review on the

14 grounds that Plaintiff could not prove authorized ownership of the items because he could not

15 produce a purchase receipt for either item and because neither item was registered on his Property

16 Control Card (CDC Form 160-H). Dkt. No. 28-1. This grievance was denied at the third and final

17 level of review on June 1, 2016. *Id.*

18 Plaintiff's Property Control Card, Form 160-H, does not list any watches and lists only one

19 pair of Nike shoes. The size or type of Nike shoes is not listed. Dkt. No. 27-11.

20 **B.     Disputed Facts**

21 Plaintiff contends that he has possessed the Invicta watch and size 12 Nike shoes since his

22 time at FSP. He alleges that the March 23, 2015 FSP Inmate Property Inventory reflects his

23 possession of these items because it refers to two pairs of shoes and two watches. He further

24 claims that the reason the SQSP inventory lists only one pair of shoes and one watch is due to

25 SQSP staff's failure to accurately inventory his belongings. He claims that although both the

26 Gucci watch and the Invicta watch were in his property box, SQSP staff incorrectly failed to list

27 both watches, and that SQSP incorrectly failed to list the pair of Nike shoes that he was wearing

28 during his transit from FSP to SQSP. Dkt. No. 36 at 29.

3

Plaintiff alleges that Defendant Lujan confiscated the items for the purpose of taking Plaintiff's valuable belongings. According to Plaintiff, after first noticing the size 12 Nike Air Jordans and the Invicta watch during the September 25, 2015 cell search, Defendant Lujan conducted a Google search to determine the value of these items. Dkt. No. 36 at 10. Once Defendant Lujan realized the value of these items, she conducted a cell search on October 9, 2015 for the purpose of possessing Plaintiff's valuable belongings. Dkt. No. 36 at 10. When Defendant Lujan confiscated the items, Plaintiff asked her, "Are we going to discuss this?" and Defendant Lujan responded, "Not today." Dkt. No. 19 at 10. A few days later, an inmate approached Plaintiff to convey a threat from Defendant Lujan, stating that if Plaintiff attempted to retrieve his property, he would be issued a Rules Violation Report (CDCR Form 115). Dkt. No. 19 at 10. When Plaintiff protested, the other inmate informed him, "This is San Quentin and they do as they please." Dkt. No. 19 at 10. The confiscated items have since "disappeared" because of Defendant Lujan's deliberate actions. Dkt. No. 36 at 21.

Defendant Lujan disputes Plaintiff's allegations regarding the motivation for the October 9, 2015 cell search, and the current disposition of the confiscated items. According to Defendant Lujan, during the October 9, 2015 search, Defendant Lujan found two pairs of Nike shoes and an Invicta watch with an extra metal band. Lujan Decl. ¶ 8. Because one of the pairs of Nike shoes had no metal eyelets and was a type of shoe that could be purchased from one of the approved third-party providers, Defendant Lujan did not confiscate this pair. Lujan Decl. ¶ 8. The other pair of Nike shoes, size 12 Air Jordans, had metal eyelets which are prohibited by prison regulations. Lujan Decl. ¶ 5. Defendant Lujan attempted to find evidence Plaintiff had lawfully acquired the Nike Air Jordans with metal eyelets and the Invicta watch with extra metal band, but the items were not listed on Plaintiff's property card (CDC Form 160-H) and Defendant Lujan could not find any purchase receipts for these items. Lujan Decl. ¶ 7. Defendant Lujan performed a Google search to ascertain whether the Invicta watch exceeded the $50 value limitation for watches registered to inmates. Lujan Decl. ¶ 7. Defendant Lujan confiscated the Nike Air Jordans with metal eyelets and the Invicta watch and extra metal band because they violated prison regulations. Lujan Decl. ¶ 7 and Ex. E. Defendant Lujan denies taking the items as her own

personal property and is unaware of anyone else taking the items as their own personal property. Dkt. No. 40-1 ("Suppl. Lujan Decl.") ¶ 2. Defendant Lujan states that the confiscated items are currently stored with the SQSP ISU as evidence. Suppl. Lujan Decl. ¶ 2. Defendant Lujan also denies threatening Plaintiff for any reason, including threatening him to stop seeking to recover the confiscated items. Suppl. Lujan Decl. ¶ 4. Defendant Lujan further denies sending an inmate or any other person to convey threats to Plaintiff. Suppl. Lujan Decl. ¶ 4.

### C. Prison Regulations Regarding Prisoner Property

Section 3192 of the California Code of Regulations, title 15, provides that

> [a]n inmate's right to inherit, own, sell or convey real and/or personal property does not include the right to possess such property within the institutions/facilities of the department. An inmate may not exchange, borrow, loan, give away or convey personal property to or from other inmates. Violation(s) of this rule may result in disciplinary action, and confiscation and/or disposal of the personal property.

15 Cal. Code Regs. § 3192. The CDCR's internal regulations also provide that the possession of personal property by inmates within the prison is a privilege that is subject to conditions and restrictions. DOM § 54030.1. Inmates are allowed to possess in their quarters/living areas the state-issued and authorized personal property listed in the Authorized Personal Property Schedule ("APPS"), which is located in Appendix A to the DOM. Section 54030.7 of the DOM sets forth the criteria governing what constitutes, and how to obtain, authorized personal property. DOM § 54030.1. One requirement is that, except in certain instances that are inapplicable here, personal property items must be received or obtained from a departmentally approved vendor. Lujan Decl. ¶ 4 and DOM §§ 54030.7–54030.9.1. Inmate personal property shall not be accepted at the front entrance gate or visiting desks. DOM § 54030.7. Title 15 prohibits inmates from exchanging, borrowing, loaning, giving away, or otherwise conveying personal property to or from other inmates. Lujan Decl. ¶ 4.

Title 15 requires inmates to register personal property items which are not consumable and possess enough intrinsic value to be a significant target for theft or bartering. DOM § 54030.12.1. Registerable personal property is identified in the APPS. DOM § 54030.12.1. Shoes and watches must be registered. Lujan Decl., Ex. B.

Pursuant to both SQSP Operating Procedure and Title 15, contraband is any personal

property not authorized by departmental or institutional regulations, in excess of the maximum quantity permitted, or which is received or obtained from an unauthorized source. 15 Cal. Code Regs. § 3006; DOM § 52051.4. If an inmate fails to register property pursuant to the regulations, it is designated as contraband. Dangerous contraband is defined as anything that can be used to facilitate a crime, including metal. 15 Cal. Code Regs. § 3000. In addition, contraband includes anything that, if retained in possession of the inmate, presents a serious threat to facility security or the safety of inmates and staff. 15 Cal. Code Regs. § 3006

Title 15 prohibits inmates from possessing any contraband or material reasonably deemed a threat to legitimate penological interests. 15 Cal. Code Regs. § 3006. Under Title 15, the possession of property that is not registered in the inmate's name and number is cause for disciplinary action, including confiscation of the unregistered property. 15 Cal. Code Regs. § 3191. General contraband, with the exception of contraband items which are unauthorized by departmental or institutional regulations but obtained by authorized means, must be disposed of by the facility garbage; or removed from the facility grounds by an approved, certified metal vendor; or if state-issued, rerouted to the appropriate departments for disposition and/or repair for reissuing. DOM § 52051.16. Contraband items which are unauthorized by departmental or institutional regulations but obtained by authorized means may be sent home by inmates at their own expense or may be donated to the prison facility. DOM § 52051.16.

Pursuant to the APPS, inmate tennis shoes may not contain metal components, including eyelets, and may not exceed a value of $75. Lujan Decl. ¶ 5 and Ex. B. Metal eyelets present a threat to prison security because inmates can use the metal components to make weapons. Lujan Decl. ¶ 5. Pursuant to the APPS, inmates may not possess watches with a purchase value that exceeds $50. Lujan Decl. ¶ 5 and Ex. B. Property items worth more than the maximums listed in the APPS threaten institutional security because, among other reasons, they create an incentive for inmates to steal or otherwise impermissibly acquire property that does not belong to them. Lujan Decl. ¶ 5 and Ex. B. Tennis shoes and watches more valuable than the maximums listed in the APPS are prohibited because they can be used as a type of currency to facilitate improper and dangerous prison activities, such as drug and cellphone trafficking. Lujan Decl. ¶ 5.

**DISCUSSION**

**A.     Legal Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

**B.     Summary Judgment Motion**

Defendant Lujan argues that she is entitled to summary judgment for the following reasons. First, she argues that Plaintiff did not have a property interest in the confiscated

7

contraband. Second, Defendant Lujan argues that if Plaintiff had a property interest in the confiscated contraband, the due process claim fails because the deprivation was authorized. Finally, Defendant Lujan argues that she is entitled to qualified immunity.[2] Plaintiff argues that he has a property interest in the confiscated items because they were his rightful property, and they have been in his possession since his time at FSP. Dkt. No. 36 at 15–17. He alleges that the only reason the items were confiscated and designated as contraband was because Defendant Lujan realized the value of the items and sought to possess them herself. Dkt. No. 36 at 11–12 and 20. Plaintiff argues that even if the confiscation were authorized and lawful, due process requires that he be allowed to send the items to an individual willing to accept the property. Dkt. No. 36 at 17–20. Finally, Plaintiff argues that Defendant Lujan is not entitled to qualified immunity because a reasonable official
> would know not to take an inmate's non-dangerous personal property and then deny the inmate his right to send that property to family and/or friends outside of prison.

Dkt. No. 36 at 22.

For the reasons set forth below, Court finds that Defendant Lujan is entitled to qualified immunity.

### 1. Qualified Immunity Standard

Qualified immunity is an entitlement, provided to government officials in the exercise of their duties, not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. The doctrine thus intends to take into account the real-world demands on officials in order to allow them to act "swiftly and firmly" in situations

---

[2] Defendant also argues that if the deprivation was unauthorized, the due process claim fails because two meaningful post-deprivation remedies were available to Plaintiff. Dkt. No. 27 at 22–23. The Court declines to address this argument because both parties agree that the deprivation was authorized by prison regulations, although Plaintiff alleges that the prison regulation was a pretext for Defendant Lujan's personal appropriation of the confiscated items.

8

where the rules governing their actions are often "voluminous, ambiguous, and contradictory." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). "The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Id.*

To determine whether a government official is entitled to qualified immunity, the Court must consider (1) whether the official's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident. *Pearson*, 555 U.S. at 232. Courts are not required to address the two qualified immunity issues in any particular order, and instead may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. With respect to the second prong of the qualified immunity analysis, the Supreme Court has recently held that "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent . . . placed the statutory or constitutional question beyond debate." *City and County of San Francisco, Cal. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (omission in original) (internal quotation marks omitted). This is an "exacting standard" which "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted). A court determining whether a right was clearly established looks to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Community House, Inc. v. Bieter*, 623 F.3d 945, 967 (9th Cir. 2010) (citing *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)).

It is not necessary that a prior decision rule "the very action in question" unlawful for a right to be clearly established. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). However, the Supreme Court has repeatedly cautioned that courts should not define clearly established law at a high level of generality. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam); *see also Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016) (plaintiff need not find case with

identical facts, but the further afield existing precedent lies the more likely that official's acts fall within vast zone of conduct that is constitutional).

**2. Analysis**

The Court finds that Defendant Lujan is entitled to qualified immunity because, making all reasonable inferences in Plaintiff's favor, at the time that Defendant Lujan confiscated Plaintiff's items pursuant to prison regulations, there was no clearly established law that established "beyond debate" that the conduct alleged violated the Constitution.

The undisputed facts establish that Defendant Lujan's actions in confiscating the items and declining to allow Plaintiff to mail the items to persons outside the prison were taken in accordance with prison regulations.

The pair of Nike shoes and the Invicta watch were confiscated in accordance with prison regulations which require the registration of both the Nike shoes and the Invicta watch, and which designated as contraband items which are not authorized by prison regulations or which are obtained from an unauthorized source. DOM §§ 52051.4, 54030.1, 54030.12.1; 15 Cal. Code. Regs. §§ 3000, 3006, 3191; and Lujan Decl., Ex. B. Neither of the confiscated items was registered. Neither item was listed on Plaintiff's Form 160-H Property Card, Dkt. No. 27-11, which is a requirement for registration, 15 Cal. Code Regs. § 3191 and DOM § 54020.12.1. And Plaintiff has not provided prison officials with receipts for these items that would have allowed prison officials to register them.[3] Dkt. No. 36 at 11. Although Plaintiff states that he disputes Defendant's assertion that the confiscated items are unregistered, Dkt. No. 36 at 10, his statement is conclusively contradicted by his Form 160-H Property Card, which does not list either confiscated item. Plaintiff's conclusory and unsupported statement is insufficient to create a material issue of fact as to whether the confiscated items violated prison rules requiring registration. *Fed. Trade Comm'n v. Publ'g Clearing House*, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) ("[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence,

---

[3] Prison officials have reviewed the receipts for Plaintiff's purchases from third-party vendors, which are kept in his Central File, but there are no receipts for either confiscated item. Lujan Decl., Ex. H.

10

is insufficient to create a genuine issue of material fact.") (internal quotation marks and citation omitted).

Prison officials' denial of Plaintiff's request to send the confiscated items to friends or family outside of prison was also in accordance with prison regulations. Prison regulations require that confiscated items be disposed of by the facility garbage; or removed from the facility grounds by an approved, certified metal vendor; or if state-issued, rerouted to the appropriate departments for disposition and/or repair for reissuing. DOM § 52051.16. While DOM § 52051.16 allows inmates to send home unauthorized items obtained by authorized means, this option is unavailable to Plaintiff with respect to these confiscated items because the confiscated items are unauthorized, in that the shoes have metal eyelets and the watch is greater in value than $50, and in that neither item was obtained through authorized means.

At the time of Defendant Lujan's actions, it was not clearly established that a prison officer could not seize confiscated items that violated prison regulations. Nor was it clearly established that an inmate had a right to dispose of confiscated items in a manner inconsistent with prison regulations.

Plaintiff argues that Defendant Lujan is not entitled to qualified immunity because any reasonable prison official would know not to take an inmate's non-dangerous personal property and not to deny the inmate his right to send that property to family and/or friends outside of prison. The Court disagrees. First, the uncontested facts establish why the confiscated items (a relatively expensive watch and a pair of shoes with metal eyelets) pose a potential danger in a prison. Further, Plaintiff cites no law or regulation that establishes his right to send these confiscated items to family or friends outside of prison or that establishes his right to possess even purportedly "non-dangerous" personal property that violates prison regulations. Nor is the Court aware of any published Supreme Court or Ninth Circuit law existing in October 2015 that would have put Defendant Lujan on notice that seizing Plaintiff's property and retaining the property pursuant to prison regulations violated the Constitution. *See Community House, Inc.*, 623 F.3d at 967 (looking to Supreme Court and Ninth Circuit law existing at the time of the alleged act to determine whether right was clearly established). Because there was no clearly established right

11

for an inmate to retain property that violated prison regulations, and no clearly established right for an inmate to send outside of the prison property that violated prison regulations, Defendant Lujan is entitled to qualified immunity. *Pearson*, 555 U.S. at 232. In addition, the fact that Defendant Lujan's actions were authorized by prison regulations further weighs in favor of finding qualified immunity. *See Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) ("Courts have . . . held that the existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional.").

Accordingly, the Court finds that Defendant Lujan is entitled to qualified immunity on Plaintiff's due process claim. *See Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 990 (9th Cir. 2014) (defendants are not liable for violation of right that was not clearly established at time violation occurred). The Court GRANTS summary judgment in favor of Defendant Lujan.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment. The Clerk shall terminate Dkt. No. 27, enter judgment in favor of Defendant Lujan, and close this case.

**IT IS SO ORDERED.**

Dated: March 27, 2018

HAYWOOD S. GILLIAM, JR.
United States District Judge